UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INCLUSION, INC.; EXCEPTIONAL CHILD CENTER, INC.; LIVING INDEPENDENTLY FOR EVERYONE, INC.; TOMORROW'S HOPE SATELLITE SERVICES, INC.; WDB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD ARMSTRONG, and LESLIE CLEMENT, in their official capacities, <br><br> Defendants. | Case No. 1:09-cv-00634-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

      Before the Court are cross Motions for Summary Judgment by Plaintiffs (Dkt. 29) and Defendants (Dkt. 30). As memorialized in Docket Entry Order 27, the parties agreed that this case can be resolved on stipulated facts in lieu of a bench trial. The parties submitted Stipulated Facts (Dkt. 28) and briefing, and the Court heard oral argument on October 31, 2011. Having fully considered the parties' written and oral arguments, and being familiar with the record, including stipulated facts, the Court will grant summary

judgment as to Plaintiffs, and deny summary as to Defendants, as more fully expressed below.

## BACKGROUND

Plaintiffs are five Idaho corporations providing "residential habilitation" services to Medicaid eligible individuals in supported living settings in the state of Idaho. *Stip. Facts* at 2-3, Dkt. 28. Residential habilitation describes an array of services designed and provided to assist Medicaid participants in residing successfully in the community. *Id.* at 3. Such services include, but are not limited to, skills training, and assistance with decision-making, money management, socialization, mobility, and behavior shaping or management, as well as grooming, bathing, eating, administering medications, meal preparation, laundry, shopping and the like. *Id.* Services may also include skills training for family and non-family caregivers for participants. *Id.*

Defendants are Richard Armstrong – Director of Idaho's Department of Health and Welfare (IDHW), and Leslie Clement – an IDHW Deputy Director and former IDHW Division of Medicaid Administrator. *Id.* at 2. Clement has had the responsibility of administering and operating Idaho's Medicaid program under the direction and supervision of Armstrong at all times relevant to this case. *Id.*

Medicaid is a cooperative federal-state program that directs federal funding to participating states to provide medical assistance to "families with dependent children, . . . [and] aged, blind and disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1; *Stip. Facts* at 2.

States that choose to participate in the Medicaid program – including Idaho – must comply with the requirements of the Medicaid Act, which includes development of a state plan. 42 U.S.C. § 1396a(a). The state plan must be approved by the Federal Center for Medicaid and Medicare Services (CMS). 42 C.F.R. § 430.10.

In 1981, Congress passed amendment § 1915(c) "in response to . . . studies showing that many persons residing in Medicaid-funded institutions would be capable of living at home or in the community if additional support services were available." *Sanchez v. Johnson*, 416 F.3d 1051, 1054 (9th Cir. 2005). Under the amendment, CMS can waive certain Medicaid Act requirements where a state demonstrates that the cost of caring for an individual in a home and community based program would be less than or equal to the cost of providing institutional care. *Id.* Idaho has been approved by CMS for three waiver programs, including the Developmentally Disabled Home and Community Based Services Waiver (DD Waiver). *Stip. Facts* at 2. The services provided by Plaintiffs in this case are pursuant to Idaho's DD Waiver. *Id.* at 3.

Effective October 1, 2004, the IDHW established reimbursement rates for two separate levels of care – "high support," and "intense support." *Id.* On July 1, 2006, based on onsite observations and a survey of residential habilitation agencies, those rates (see table below) increased slightly. *Id.*

In 2005, Idaho's Legislature passed Idaho Code § 56-118, requiring the IDHW to "implement a methodology for reviewing and determining reimbursement rates" for Medicaid services that incorporates providers' actual costs of providing services. I.C.

§ 56-118(1), (2).  In response, the IDHW contracted Johnson, Villegas-Grubb and Associates (JVGA) to conduct applicable studies.  *Stip. Facts* at 4.  JVGA's efforts were overseen by Sheila Pugatch, Principal Financial Specialist at IDHW, who manages the Office of Reimbursement Policy and has primary responsibility for setting Medicaid reimbursement rates in Idaho.  *Id.* at 6.

JVGA surveyed Medicaid providers regarding the cost of providing services.  *Id.* at 4.  Based on its survey, JVGA submitted a report to the Idaho Legislature on November 30, 2006, recommending increases in reimbursement rates.  JVGA continued to conduct studies, and in 2009, the IDHW submitted revised proposed rates that reflected further analysis.  The current rates (implemented in July 2006), as well as those based on JVGA's surveys are set forth as follows:

|  | Current rate, effective July 1, 2006 | JVGA rate proposed November 30, 2006 | IDHW rate proposed in 2009 |
|---|---|---|---|
| Daily Rate – High Support | $225.32 | $228.48 | $248.40 |
| Daily Rate – Intense Support | $268.36 | $342.72 | $496.56 |

Despite, the proposed amendments based on JVGA's studies, the IDHW has not changed the reimbursement rates implemented in July 2006.  According to Pugatch, the rate changes proposed in 2009 would have increased Idaho's Medicaid expenditures by $4 million.  *Id.* at 6.  Because Idaho's Legislature did not appropriate the necessary funds, the IDHW did not implement the proposed rate changes.  *Id.* at 6.  Thus, the current

MEMORANDUM DECISION AND ORDER - 4

reimbursement rates are not based on the cost studies performed by JVGA between 2006 and 2009.  *Id.* at 6.

There are currently 61 residential habilitation agencies, such as Plaintiffs, in Idaho. *Id.* at 7.  There are 6,202 participants receiving supported living services.  *Id.*  Services covered by the DD Waiver are readily available to eligible participants; there are no waiting lists for any Medicaid services in Idaho.  *Id.*  The IDHW Critical Incident and Complaint Data Base, used to track Medicaid benefits and services complaints, including complaints related to access to services, shows no unresolved complaints for supported living services.  *Id.*  Neither plaintiff agency has turned away a prospective client based on an inability to afford providing them supported living services.  *Id*.

## LEGAL STANDARD

Plaintiffs challenge the IDHW's compliance with the Medicaid Act, and seek prospective and injunctive relief.  Where a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the court shall grant summary judgment in favor of the movant.  Fed. R. Civ. P. 56(a).  The parties in this case have stipulated to all relevant facts and filed cross motions for summary judgment, arguing that each is entitled to judgment as a matter of law.  The Court now applies the relevant law to the stipulated facts before it.

## ANALYSIS

The federal statutory provision at issue here is "§ 30A" of the Medicaid Act. Under that provision, participating states must set forth in their state plan, a process for

the use of, and payment for, Medicaid Plan services.  42 U.S.C. 1396a(a)(30)(A).  The plan should prevent unnecessary use of care and services, and ensure that payments "are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers" to meet the need for care and services in the geographic area.  *Id.*

The Ninth Circuit has interpreted § 30A as having both "substantive and procedural requirements."  *Indep. Living Center v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).  Substantively, the agency administering its state's Medicaid program must set reimbursement rates "that bear a reasonable relationship to efficient and economical . . . costs of providing quality services."  *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1496 (9th Cir. 1997).  To accomplish this, the agency must perform and "rely on responsible cost studies . . . that provide reliable data as a basis for its rate setting."  *Indep. Living Center*, 572 F.3d at 651.  Where rates fail to "substantially reimburse providers their costs," there must be some justification  other than "purely budgetary reasons."  *Belshe*, 103 F.3d at 1499 n.3 (citing *Beno v. Shalala*, 30 F.3d 1057, 1069 (9th Cir. 1994)).

Ninth Circuit cases addressing alleged violations of § 30A have involved changes to reimbursement rates or methodologies, not maintenance of existing rates.  *Cf. Indep. Living Ctr. v. Shewry*, 543 F.3d 1047 (9th Cir. 2008); *Indep. Living Ctr. v. Shewry*, 543 F.3d 1050 (9th Cir. 2008); *Indep. Living Ctr. v. Maxwell-Jolly*, 572 F.3d 644; *Indep. Living Ctr. v. Maxwell-Jolly*, 590 F.3d 725 (9th Cir. 2009); *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098 (9th Cir. 2010); *Dominguez ex rel. Brown v.*

*Schwarzenegger*, 596 F.3d 1097 (9th Cir. 2010); *Indep. Living Ctr. v. Maxwell-Jolly*, 374 Fed.Appx. 690 (9th Cir. 2010).  Indeed, this Court has addressed the validity of a reimbursement rate reduction, and rejected the rate change based on the IDHW's failure to rely on responsible cost studies.  *Unity Service Coordination, Inc. v. Armstrong*, 2011 WL 864472 (D. Idaho, March 10, 2011).

Here, Plaintiffs do not challenge the propriety of a rate change action.  Instead, they challenge the IDHW's inaction, or failure to amend existing reimbursement rates.  The IDHW set rates in July 2006 based on "onsite observations of participants" and a survey of residential habilitation agencies.  *Stip. Facts*, Dkt. 28 at 4.  But subsequent studies, performed at the IDHW's request, reveal that actual provider costs exceed the 2006 rates.

The IDHW highlights that there are no unresolved complaints regarding care for supported living clients.  Also, Plaintiffs Inclusion and Exceptional Child Center have never turned away a client based on the cost of providing services.  Given these stipulated facts, the record would appear to support that current rates are "consistent with efficiency, economy, and quality of care," as discussed by the Ninth Circuit in *Belshe*, 103 F.3d at 1496.  However, the court in *Belshe* went on to say that "[provider] costs are an integral part of the consideration" that cannot be ignored.  *Id.* at 1496-99.

Thus, to fulfill the substantive requirements of § 30A, a state agency must consider actual provider costs.  To satisfy § 30A's procedural requirements, the IDHW

MEMORANDUM DECISION AND ORDER - 7

cannot set rates based on responsible cost studies, then disregard undisputed evidence of increasing costs from studies completed in subsequent years.

The Court is reluctant to become entangled in the management of state government. Also, the Court is mindful that an order requiring the IDHW to amend its reimbursement rates will not cause requisite funding to appear; the ruling may in fact force the IDHW to reallocate funds from other programs. But the law is clear that budgetary concerns cannot form the sole basis for reimbursement rates. *Belshe*, 103 F.3d at 1499. The Court need not wait for evidence of low quality care or insufficient access to services before intervention is warranted.

In supplemental briefing provided at the Court's request, the parties note that the Ninth Circuit stands alone in finding that § 30A includes procedural requirements to achieve economy, efficiency, access, and quality. *See Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1030 (7th Cir. 1996); *Minnesota Homecare Assn. v. Gomez*, 108 F.3d 917, 918 (8th Cir. 1997); *Rite Aid of Penn., Inc. v. Houston*, 171 F.3d 842, 851 (3rd Cir. 1999); *Conn. Assn. of Health Care Facilities, Inc. v. Rell*, 395 Fed.Appx. 741, 742-43 (2d Cir. 2010). However, the United States Supreme Court denied a petition for writ of certiorari on this issue in the Ninth Circuit's decision in *Belshe*. *Belshe v. Orthopaedic Hosp.*, 522 U.S. 1044 (1998). Despite the positions taken by other circuits, the Ninth Circuit's clear holding in *Belshe* remains the controlling authority for the Court here.

Although the Supreme Court's recent grant of certiorari in *Indep. Liv. Ctr. v. Maxwell-Jolly*, 131 S.Ct 992 (2011), raises some question as to the long-term viability of

the Ninth Circuit's holding in *Indep. Liv. Ctr. of So. Cal v. Shewry*, 543 F.3d 1050, 1065 (9th Cir. 2008), that development does not appear to have any direct significance here. In *Shewry*, the Ninth Circuit held that providers have standing under the Supremacy Clause to challenge a state law reducing reimbursement rates, as preempted by § 30A. On that issue, the Eleventh Circuit stands apart from a majority of sister circuits, including the Ninth Circuit, which agree that provider standing exists.  With this backdrop, the Court finds no reason to stay its decision here.  Again, the Ninth Circuit's position is clear, and controls the outcome as discussed above.

The Court will therefore grant Plaintiffs' motion for summary judgment, and deny Defendants' motion for summary judgment.

## ORDER

**IT IS ORDERED THAT**:

1. Plaintiffs' Motion for Summary Judgment (Dkt. 29) is **GRANTED**.

2. Defendants' Motion for Summary Judgment (Dkt. 30) is **DENIED**.

DATED: December 12, 2011

B. Lynn Winmill
Chief Judge
United States District Court