UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INCLUSION, INC.; EXCEPTIONAL CHILD CENTER, INC.; LIVING INDEPENDENTLY FOR EVERYONE, INC.; TOMORROW'S HOPE SATELLITE SERVICES, INC.; WDB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD ARMSTRONG, and LESLIE CLEMENT, in their official capacities, <br><br> Defendants. | Case No. 1:09-cv-00634-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants' Motion for Reconsideration (Dkt. 40), Plaintiffs' Motion for Entry of Judgment (Dkt. 43) and Plaintiffs' Motion to Expedite (Dkt. 44). Having considered the parties' briefing and being familiar with the record, the Court will deny reconsideration and enter judgment, thus rendering moot the Motion to Expedite.

## BACKGROUND

Plaintiffs are five Idaho corporations providing "residential habilitation" services to Medicaid eligible individuals in supported living settings in the state of Idaho. *Stip. Facts*, Dkt. 28 at 2-3. Residential habilitation services help Medicaid participants to reside in the community by providing skills training, assistance with decision-making, socialization, mobility, and activities of daily living (e.g. eating, bathing). *Id.* Defendants are Richard Armstrong – Director of Idaho's Department of Health and

Welfare (IDHW), and Leslie Clement – an IDHW Deputy Director and former IDHW Division of Medicaid Administrator. *Id.* at 2.

Plaintiffs filed this action seeking to enjoin changes to IDHW's reimbursement rates for service providers – such as Plaintiffs – arguing that the proposed rate changes violated state and federal law. The parties agreed the matter could be decided on stipulated facts, without need for a trial. After reviewing the Stipulated Facts and considering the parties' arguments, this Court granted summary judgment to Plaintiffs and against Defendants. *Memorandum Decision & Order*, Dkt. 39. Defendants now seek reconsideration of that decision, and Plaintiffs move for entry of judgment.

## LEGAL STANDARD

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected, and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone.

Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible

when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.). However, the need to be right must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988).

Reconsideration of a court's prior ruling under Federal Rule of Civil Procedure 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (citation omitted). Defendants here seek reconsideration under all three bases.

## ANALYSIS

**1.     New Evidence**

Defendants first argue that the Court should reconsider its decision based on newly discovered evidence: two errors in the parties' Stipulations of Fact, discovered after the stipulations were submitted to the Court; and previously unavailable data regarding bids by service providers for an emergency placement services contract. According to Defendants, the number of participants receiving supported living services, as stipulated

by the parties, reflects a clerical error, and should have been much lower.[1] Defendants state that the stipulated rate for intense support services – $496.56 – is also incorrect, and should have been $413.82. *Pugatch Dec.*, Dkt. 40-3 ¶ 4. Defendants do not discuss how either error warrants reconsideration, except to note that the Court's decision "rests in part on" the incorrect data. *Def. Br.*, Dkt. 40-1 at 4. Defendants further argue that bids for an emergency placement services contract, unavailable before December 2011, also support reconsideration.

The Court finds that the proffered new evidence fails to support reconsideration for three reasons. First, the errors in the parties' stipulated facts are not new; Defendants have not shown, nor do they argue, that the evidence was unavailable or could not have been discovered at the time the parties submitted stipulated facts to the Court. *C.f. Lainez-Ortiz v. INS*, 96 F.3d 393, 400 (9th Cir. 1996)(requiring newly discovered evidence to have been previously unavailable, in order to warrant reopening proceedings). As to the bids for the emergency placement services contract, the Court finds such evidence immaterial to the costs and reimbursement rates for residential habilitation service providers.

Second, although Defendants cite a declaration from Sheila Pugatch (IDHW's Principal Financial Specialist), to support that the two stipulations are in error, there is no

---

[1] The Stipulated Facts note "[t]here are 6,202 participants receiving supported living services;" although no year is cited, the next sentence provides, "[a]s of the end of calendar year 2010 Plaintiffs submitted claims for supported living services for the following number of participants . . .." *Stip. Facts*, Dkt. 28 at 7. Defendants now assert that there were 717 participants using supported living services as of September 30, 2011. *Pugatch Dec.*, Dkt. 40-3 ¶ 3.

indication that Plaintiffs agree. Absent further proceedings or a stipulation by Plaintiffs, Defendants' "new evidence" is simply an unresolved issue of fact.[2]

Third, even if the parties had stipulated to the evidence now offered by Defendants, the Court's decision would be no different. It is undisputed that reimbursement rates for the relevant service providers have remained unchanged since 2006. *Stip. Facts*, Dkt. 28 at 6. It is also undisputed that between 2006 and 2009, provider cost studies were done at the IDHW's request. *Id.* Most significantly, the parties agree that the rates have not been changed because the state legislature failed to appropriate funds to pay for the increases suggested by the cost studies. *Id.* The Court granted summary judgment to Plaintiffs because, as shown by these agreed facts, the current reimbursement rates fail to take into account actual provider costs.

The corrected number of participants would have no effect on the Court's analysis. The corrected figure for intense support services, although lower than the stipulated figure, is still well above – and thus unaccounted for in – the current rate. The Court will therefore deny reconsideration on the basis of newly discovered evidence.

**2.     Clear Error**

Defendants' second basis for reconsideration is that the Court clearly erred in its analysis of *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491 (9th Cir. 1997). Defendants' arguments are little more than an effort to take a second bite at the apple. Defendants

---

[2] Defendants ask that the stipulated facts be corrected in the record, but such request is properly the subject of a separate motion to which Plaintiffs would be entitled to respond. The Court here will address the request for reconsideration only.

attempt to distinguish *Belshe* – all but ignored in Defendants' summary judgment briefing – on its facts. The Court thoroughly examined and discussed *Belshe* in rendering its decision for Plaintiffs. The Court stands by that analysis now. Defendants having failed to show clear error, the Court will deny reconsideration on that basis.

### 3. Change In Controlling Law

Defendants asked the Court to delay judgment until after the Supreme Court issued its decision in *Douglas v. Indep. Living Ctr.*, – S.Ct. – , 2012 WL 555204 (2012). That case was decided on February 22, 2012, thus the request to postpone judgment is moot. As Plaintiffs correctly observe, the Supreme Court's decision in *Douglas* did not alter *Belshe*, or this Court's decision here. Given the procedural posture in *Douglas*, the Supreme Court remanded to the Ninth Circuit to address whether a plaintiff may bring a Supremacy Clause challenge where the allegedly non-compliant state law has been approved by the federal Centers for Medicare & Medicaid Services. The action before this Court does not challenge a state statute, let alone a state statute approved by the designated federal agency. Instead, it challenges the IDHW's compliance with state and federal law. There being no relevant change in controlling law, the Court will deny reconsideration on that basis as well.

### 4. Entry of Judgment

The Supreme Court having decided *Douglas*, there is no basis to delay entry of judgment here. Plaintiffs submitted a proposed judgment. Other than to request that the Court delay entry, Defendants have not objected nor otherwise responded with an

alternate proposal. The Court finds Plaintiffs' proposed form appropriate and in accordance with the Court's Memorandum Decision and Order (Dkt. 39), and will thus enter judgment consistent with Plaintiffs' proposal, to be filed concurrently herewith.

## ORDER

**IT IS ORDERED THAT:**

1. Defendants' Motion for Reconsideration (Dkt. 40) is DENIED.

2. Plaintiffs' Motion for Entry of Judgment (Dkt. 43) is GRANTED. Judgment will be entered separately.

3. Plaintiffs' Motion to Expedite (Dkt. 44) is DENIED as MOOT.

DATED: April 12, 2012

B. Lynn Winmill
Chief Judge
United States District Court